FILED

Sept 1
2021 AUG 32  AM 8: 36

DISTRICT COURT
E DISTRICT OF FLORIDA
ORLANDO, FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

v.                                                 Case No. 6:21-cv-

APPROXIMATELY $4,594,975.15
SEIZED FROM SUNTRUST/TRUIST
BANK ACCOUNT #1000288326506 HELD BY
HARVEST SMALL BUSINESS FINANCE, LLC,

        Defendant.

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

        In accordance with Rule G(2) of the Supplemental Rules for Admiralty

or Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States

brings this complaint and alleges upon information and belief as follows:

### NATURE OF THE ACTION

        1.      This is a civil action *in rem* to forfeit to the United States,

pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule G(2), approximately

$4,594,975.15 seized from SunTrust/Truist Bank Account #1000288326506

held in the name of Harvest Small Business Finance, LLC (Defendant Funds)

on the grounds that the funds are proceeds obtained from wire fraud

offenses, in violation of 18 U.S.C. § 1343.  Thus, the Defendant Funds are

subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3.      This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(A), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4.      Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1355(b)(1), because pertinent acts or omissions giving rise to the forfeiture occurred in this District.

5.      Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1). The United States will then execute the warrant on the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANT *IN REM*

6.      The Defendant Funds consist of approximately $4,594,975.15 seized from SunTrust/Truist Bank Account #1000288326506 held in the name of Harvest Small Business Finance, LLC. The funds were seized by the

2

United States Secret Service ("USSS") on or about August 6, 2021, pursuant to

a Federal seizure warrant after a finding of probable cause that the funds

constituted proceeds of wire fraud offenses. The funds are currently held in

the Treasury Suspense account.

7.      As set as set forth in Supplemental Rule G(3)(b)(i), the Clerk of

Court must issue a warrant to arrest the Defendant Funds if they are in the

government's possession, custody, or control.

BASIS FOR FORFEITURE

8.      Pursuant to 18 U.S.C. § 1343, it is unlawful to "devise[] . . . any

scheme or artifice to defraud," or to "obtain[] money or property . . . by means

of false or fraudulent pretenses, representations, or promises," if the person

"transmits or causes to be transmitted by means of wire . . . communication in

interstate or foreign commerce any writings . . . or sounds . . . for the purpose

of executing such scheme or artifice." *Id.*

9.      The Defendant Funds are proceeds of a wire fraud scheme,

obtained in violation of 18 U.S.C. § 1343, as set forth further below. The

Court's authority to order civil forfeiture of property for violations of 18 U.S.C.

§ 1343 is found in 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) provides

for the civil forfeiture of any property that constitutes or is derived from

proceeds traceable to a "specified unlawful activity," as defined in 18 U.S.C.§

3

1956(c)(7). "Specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7), includes offenses listed in 18 U.S.C. § 1961(1), which includes wire fraud in violation of 18 U.S.C. § 1343.

10.    Recognizing that money is fungible, 18 U.S.C. § 984 provides that, in a civil forfeiture action against funds in an account in a financial institution, the United States need not identify the specific funds involved in the criminal offense. Rather, "any identical property found in the same...account...shall be subject to forfeiture," so long as the action against the funds is commenced within "1 year from the date of the offense." In other words, the United States may forfeit any funds in an account, even if the funds currently in the account were not involved in the relevant criminal activity, so long as the funds forfeited do not exceed the total amount of dirty funds deposited into the account within the past year.

11.    As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Funds are proceeds of wire fraud offenses.

### FACTS

12.    At all times relevant, Jalisa Bostic was employed as a Special

4

Agent with the USSS.

I.      Overview of the Fraud

13.     On or about July 12, 2021, the USSS spoke with an Orlando-based attorney about a client of his who had information about a scam involving financial institutions.  The attorney told agents that his client, A.B, of DeLand, FL, had received approximately $4.5 million in his account at SunTrust/Truist Bank, but was disclaiming ownership of the funds. The attorney further advised agents that his client was willing to proffer with the United States.

14.     As a result, on July 13, 2021, agents met with A.B at his attorney's office in Orlando to conduct a proffer.  A.B. is a real estate broker with over 20 years of experience. A.B. explained he was looking into a new business venture involving commercial real estate, so he responded to an advertisement for a private equity commercial real estate lender based out of Manhattan, NY. A.B. spoke with someone who took his information, and provided him documents to complete. Five days later, A.B. was contacted, via text, by a private investor, "Abdul Moham," who allegedly provided $1 million in loans to private lenders.

15.     A.B. and Moham then communicated several times, primarily via WhatsApp text message.  Moham told A.B. that he had connections to day

5

traders who could double or triple a $3,000 investment in seven days. A.B. agreed to work with Moham in order to acquire a loan to pursue a Florida based commercial real estate venture.

16.     A.B. was instructed by Moham to register numerous businesses, under various names provided by Moham, and create corresponding financial accounts. A.B. stated that he believed all the financial accounts were created for the purpose of receiving funds from Moham for trading purposes because A.B. had told Moham that in the past, he had traded securities. As a result, Moham asked A.B. to partner with him on trading money and that he would also help A.B. finance the acquisition of real estate property.

17.     On May 25, 2021, Moham instructed A.B. to register a business in the name of Harvest Small Business Finance, LLC in Sheridan, Wyoming. Once A.B. received the Employer Identification Number (EIN) for the company, A.B. opened a business account at SunTrust/Truist Bank, at a branch in Orange City, FL, in the name of Harvest Small Business Finance, LLC.

18.     A.B. provided the account information to Moham via WhatsApp. Moham then told A.B. that the SunTrust/Truist Bank account would receive $4,594,975.15 on June 25, 2021.

19.     On June 25, 2021, Moham notified A.B. that $4,594,975.15 had been deposited into the Harvest Small Business Finance, LLC account at

6

SunTrust/Truist Bank. Moham then instructed A.B. to wire the money to various accounts and Coinflip.[1]

20. After receiving further instructions from Moham about what to do with the subject funds, on June 29, 2021, A.B. went to a SunTrust/Truist Bank branch located in Lake Mary, FL, and attempted to initiate three wire transfers totaling $3 million. While at SunTrust/Truist Bank, the Vice President of the branch questioned A.B. about the wire transfers. The Vice President deemed the transfers suspicious and ultimately refused to wire the funds.

21. The WhatsApp communications between A.B. and Moham show that Mohan provided A.B. with the names of several business, with instructions to register those businesses in Wyoming because Wyoming had less restrictive registration requirements. Mohan further advised A.B. that if he registered the businesses in Wyoming (versus Florida), A.B. could obtain the EINs much sooner.

22. A.B. wanted to open financial accounts at local credit unions near his residence in DeLand, FL. However, Moham instructed A.B. to open financial accounts at larger financial institutions like Bank of America, Wells

---

[1] Coinflip is a bitcoin ATM operator which allows customers to purchase and sell cryptocurrency utilizing cash, wire transfer, or credit/debit cards.

Fargo Bank, TD Bank, and Capital One. As a result, in addition to the subject account, A.B. also opened business accounts for two other companies he registered at the direction of Moham, one of which was at Bank of America.

II.    Subsequent Investigation by the USSS

23.    Through their investigation, agents were able to determine that the subject funds were wired from a title insurance agency's account at JPMorgan Chase. A representative from the title company told agents that the title company had sent approximately $4.5 million to the subject account on behalf of M.S. in connection with the sale of a nursing home he owned through a business (victim business).

24.    An interview with M.S. revealed that the transfer was the result of a fraud known as a business e-mail compromise ("BEC"). M.S. explained that in 2019, he acquired a Small Business Administration (SBA) loan from Harvest Small Business Finance in order to renovate the nursing home. However, as a result of hardships M.S. faced due to the COVID-19 pandemic, M.S. had to sell the nursing home.

25.    Because M.S. had an active loan with Harvest Small Business Finance, a portion of the proceeds from the sale were to go towards paying off the SBA loan. Accordingly, M.S. contacted Harvest Small Business Finance via

8

email for the pay-off information, and then emailed the pay-off information he received from Harvest Small Business Finance to the title company.

26.     On May 24, 2021, M.S. replied to all on an email thread between M.S., C.N. of Harvest Small Business Finance, and Harvest Small Business Finance Loan Servicing department. However, this email contained a newly added email address—"servicings@harvestcref.com"—which no one noticed at the time. Additional email communications between the parties continued using the servicings@harvestcref.com address.

27.     Then, on June 1, 2021, M.S. received an email, from whom he believed to be C.N., including a final pay-off demand and wiring instructions. Enclosed in the email were two PDF documents: 1) Demand letter; and 2) SunTrust/Truist Bank wiring instructions. M.S. then emailed the documents he received from the person he believed to be C.N. to a real estate agent, who then forwarded the email to the title company so it would have the SBA loan pay-off information.

28.     On June 25, 2021, M.S. received an email from "Ms. Webber," with an email address: mwebber@harvestcref.com stating, "Hi Matthew, We received the total payoff in the amount of $4,594,975.15 into our Account. Thanks to all of you on this!!! Take care." Accordingly, M.S. believed that the

9

SBA loan had been paid off at closing.  However, Harvest Small Business Finance never received the funds.

29.    L.B., an escrow officer with the title company, paid Harvest Small Business Finance based upon the instructions from the emails he received from M.S. Before initiating payment, L.B. contacted Harvest Small Business Finance, via its genuine telephone number as provided by M.S., and spoke with someone whom he believed to be C.N., to verify the wire instructions. It was later determined that L.B. may have spoken with the suspect, or someone associated with the suspect.

30.    Harvest Small Business Finance Vice President/Servicing Manager, N.P., checked the corporate servers for the subject emails and discussed this matter with C.N. N.P. indicated that C.N. did not send any emails to M.S. containing a pay-off demand and wire instructions, which was confirmed upon a review of their servers for the emails sent relating to this transaction. N.P. further stated the corporate call log did not indicate a telephone conversation between L.B. and C.N.

31.    The email address "servicings@harvestcref.com" is not associated with Harvest Small Business Finance.  Consequently, it appears Harvest Small Business Finance and M.S. were the victims of a BEC.

32.    Unbeknownst to all parties involved, they replied to a spoofed email address and provided the attacker access to their email addresses and loan pay-off information. Through this process, the attacker was able to utilize genuine email addresses to send and receive emails to the parties containing fraudulent wire instructions. Thus, the title company unknowingly sent the $4,594,975.15 to the incorrect financial institution for the payoff of the SBA loan.

## CONCLUSION

35.     As required by Supplemental Rule G(2)(f), the facts set forth

herein support a reasonable belief that the government will be able to meet

its burden of proof at trial. Specifically, probable cause exists to believe that

the Defendant Funds are proceeds of wire fraud offenses in violation of 18

U.S.C.

§ 1343, and are, therefore, subject to civil forfeiture pursuant to 18 U.S.C. §

981(a)(1)(C).

Dated: August   , 2021                    Respectfully Submitted,

                                          KARIN HOPPMANN
                                          Acting United States Attorney

                    By:

                                          NICOLE M. ANDREJKO
                                          Assistant United States Attorney
                                          Florida Bar No. 0820601
                                          400 W. Washington Street, Suite 3100
                                          Orlando, Florida 32801
                                          (407) 648-7500 – telephone
                                          (407) 648-7643 – facsimile
                                          E-mail: nicole.andrejko@usdoj.gov

12

## VERIFICATION

I, Jalisa Bostic, hereby verify and declare under penalty of perjury, that I am a Special Agent with the United States Secret Service, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States Secret Service, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 30 day of August, 2021.


Jalisa Bostic
Special Agent
United States Secret Service

13